Dilger v. Palmer.

## DILGER v. PALMER.

1. **Homestead:** MORTGAGE OF, WITH OTHER LANDS: ORDER OF SALE ON FORECLOSURE: STATUTE CONSTRUED. Where a mortgage is executed on the homestead and other real estate, and, before foreclosure, the mortgagor sells and conveys the other real estate and a part of the homestead to others, he cannot, under section 1993 of the Code, insist, in a foreclosure proceeding, that the property so sold and conveyed by him shall be first exhausted, before that part of the homestead which he retains shall be sold, to pay the mortgage debt. The words "other property" in said section must be limited to property which belongs to the mortgagor at the time of foreclosure. BECK, J. *dissenting.*

ON RE-HEARING.

2. **Statutes:** INTERPRETATION OF: THE LETTER CONTROLLED BY THE INTENTION. Where from the literal interpretation of a statute an effect would follow contrary to its whole intent and spirit, the intent, and not the literal meaning, must be regarded. And where a statute will operate unjustly, or absurd consequences will follow, if the literal meaning is taken, the intention, as gathered from the whole, will prevail.

*Appeal from Lucas District Court.*

WEDNESDAY, DECEMBER 13.

ACTION to foreclose a mortgage in the ordinary form, executed by Thomas E. Palmer and wife. John H. Gear, trustee,

and the First National Bank of Chariton, were made defendants, it being alleged that they were lien holders junior to the mortgage. Thos. E. Palmer and wife filed a cross-petition which was answered by the other defendants. There was a decree foreclosing the mortgage, but the relief asked for in the cross-petition was denied. The defendants, Thos. E. Palmer and wife, appeal.

*Mitchell & Penick*, for appellants.

*O. A. Bartholemew*, for plaintiff.

*Stuart Bro's*, for Gear and the Bank.

SEEVERS, J.—The facts necessary to be stated are: That Thos. E., and Ann Palmer were married in 1846, and in August, 1873, they executed the mortgage sought to be foreclosed on the S. E. $\frac{1}{4}$ of the S. W. $\frac{1}{4}$ and the S. W. $\frac{1}{4}$ of the S. E. $\frac{1}{4}$ in section 20, township 72, range 21. The first named tract was their homestead at the time the mortgage was executed, and they have ever since then resided thereon. In 1873, after the execution of the mortgage, Thos. E. Palmer caused the homestead forty to be sub-divided into three lots, and platted and designated as lots Nos. one, two, and three. The house occupied as a home by the Palmers is situate on lot number two. Afterward, in 1873, Thos. E. Palmer and wife, for the expressed consideration of five thousand dollars, conveyed by warrantee deed the S. W. $\frac{1}{4}$ of the S. E. $\frac{1}{4}$ aforesaid, and lot number one of the homestead forty, to C. H. Palmer, and on the same day they conveyed by a similar deed, for the expressed consideration of three thousand dollars, lot number three to Anna L. Palmer.

In January, 1875, Thos. E. Palmer and wife and C. H. Palmer and wife, executed to John H. Gear, trustee, a mortgage on the S. W. $\frac{1}{4}$ of the S. E. $\frac{1}{4}$ aforesaid, and said lot number one, which mortgage was afterward foreclosed, and said premises sold on execution issued on the judgment of foreclosure to said Gear as trustee, and the sheriff, before the commencement

of this action, conveyed the premises aforesaid, to said Gear as trustee.

In September, 1876, the Bank recovered a judgment against T. E., C. H. and Anna L. Palmer, upon which execution was issued and levied on said lot three, and the same was sold thereunder to the Bank, to whom the sheriff conveyed said lot three before the commencement of this suit.

The relief asked in the cross-petition of Thos. E. Palmer and wife is, that the decree foreclosing the mortgage be so drawn that all the parcels of real estate aforesaid *be sold* before said lot two, and that it only be sold in the event the other tracts fail to bring a sum sufficient to satisfy the mortgage. The relief was denied and the court ordered that lot number two should be first sold, and, that the other tracts should be sold to make up the deficiency, if any there was.

All parties to the action are satisfied with the decree of the District Court, except the mortgagors, Palmer and wife. The questions for determination are:

1. HOMESTEAD: mortgage of with other lands : order of sale on foreclosure: statute construed.

*First.* Where a mortgage is executed on the homestead and other real estate, and the latter is sold and conveyed to another by the mortgagor, can he insist that the property so conveyed should be first sold for the purpose of satisfying the mortgage? And, *Second.* When a mortgage is executed on the homestead and a part thereof is conveyed to another by the mortgagor, can the latter insist that the portion so conveyed should be first sold in satisfaction of the mortgage?

The statute provides: "The homestead may be sold for debts created by written contract executed by the persons having the power to convey, and expressly stipulating that the homestead is liable therefor, but it shall not in such cases be sold, except to supply the deficiency remaining after exhausting the other property pledged for the payment of the debt in the same written instrument." Code, § 1993. Counsel for the appellant insist:

I. That the plain and evident meaning of the statute is,

that all other property pledged for the payment of the mortgage, whether owned by the mortgagor or not at the time of the foreclosure, must be exhausted before the homestead can be sold, and that, if a portion of the homestead has been sold and conveyed by the mortgagor to another person, such portion must be first sold before the remainder can be resorted to, and it is claimed that the mortgagor has the right to so insist.

It seems to us that this argument proves too much. For by the same course of reasoning it can be as well said that a literal construction of the statute requires that all property described in the mortgage, other than the homestead, whether owned by the mortgagor or not when the mortgage was executed, must first be sold, and certainly this cannot be successfully claimed. The meaning undoubtedly is, that all property pledged, other than the homestead on which the mortgage is a valid lien, shall be first exhausted. One person cannot pledge the property of another for the payment of an indebtedness of the former. While it is true that the mortgage in question is a valid lien on all the property, it remains to be determined in what manner the lien shall be enforced. As between the mortgagor and mortgagee, the former has the right to insist that all the property other than the homestead shall be first exhausted. The statute does not contemplate a case where a portion of the property may have been sold and conveyed by the mortgagor to another person. The statutory thought is, that the title to the property remains as it was when the mortgage was executed, that no intervening rights have accrued, and that the mortgagor in justice and equity can insist, without injury to any one, that the homestead shall be last applied to the payment of the debt. Ordinarily, when a person sells real estate, he receives what he deems to be its full value from the purchaser. Now to permit such person to insist that the real estate sold should constitute the primary fund for the payment of his indebtedness, is contrary to every recognized principle of justice and equity. Such a rule ignores

the fundamental principle that he who asks equity must do equity.

It is not possible to draft a general statute which will embrace all possible cases to which it may be said to have been intended to apply. It is the province of the courts, by construction, to so mould the statute, when it can be done without violence to the words employed, as to make it accord with justice and equity, with known and universally acknowledged principles, and embrace or omit from its operation, cases not contemplated. It cannot be presumed that the General Assembly intended that the property of one person should constitute the primary fund for the payment of another's debt. The statute undoubtedly was enacted for the benefit of the owner of the homestead, and, like other provisions of law, may be waived by him. But it was never enacted to enable him to perpetrate a fraud.

It is insisted that, if the statute is so construed as to mean that only the property *owned* by the mortgagor at the time of the foreclosure, other than the homestead, shall be first sold, words to that effect must be interpolated into the statute. We do not think this is so, but simply that a state of facts is presented, which was not contemplated when the statute was enacted.

The homestead statute does not in the remotest degree contemplate that the homestead may be abandoned, yet it has been held time and again that this may be done. Without doubt, if the homestead is sold, it would amount to an abandonment. It has also been held that, by a sale and conveyance of that portion of the premises upon which the house is situate, without an intent to erect a house and home upon the remainder of the premises and reside theron, the homestead right is lost, and such remainder becomes liable to be sold on execution for the payment of debts. *Givans v. Dewey,* 47 Iowa, 414; *Windle v. Brandt,* 55 Id., 221. In so holding, words were not interpolated into the statute; but because the General Assembly failed to contemple such a case, the courts were compelled by construction to so mould the stat-

ute as to effectuate justice and equity.   We think the Palmers
are estopped from now insisting that property sold and con-
veyed by them since the execution of the mortgage, consti-
tutes the primary fund for the payment of the mortgage.
The true construction of the staute is that the property other
than the homestead, which must be first exhausted, is such as
is owned by the mortgagor at the time of foreclosure.   We
further hold that, by a sale and conveyance of a portion of the
homestead premises, the homestead right thereto is lost, and
the mortgagor cannot insist that such portion shall constitute
the primary fund for the payment of the mortgage.

II.   Section 2281 of the Revision is precisely like section
1993 of the Code, except that it provides: "But it (the home-
stead) shall not in such cases be sold except to supply the de-
ficiency remaining after exhausting the other property of the
debtor which is liable to execution."   Because of the differ-
ence between these sections, counsel for appellants insist
that the construction we have adopted ignores the change
made by the Code in the previous law.   We do not think
this is so.   The Revision required that all the property other
than the homestead owned by the mortgagor, whether it was
included in the mortgage or not, should be first exhausted,
while the Code only requires that all of such property in-
cluded in the mortgage shall be exhausted.   The Revision is
broader than the Code, and the only object of the change
made in the statute was to avoid the difficulty in determining
in what manner property not included in a mortgage should
or could be subjected as the primary fund to the payment of
the mortgage.   This will clearly appear from an examination
of the Code Commissioners' report.

III.   The conclusion reached is not based on the covenants
in the conveyances made by the Palmers.   The same result
would have been reached if the conveyances had been quit-
claim instead of warrantee deeds.   Therefore the rights of
Mrs. Palmer are not greater or better than the rights of her
husband.

AFFIRMED.

· BECK, J., *dessenting.*—I.  The controlling facts of the case, as established by the evidence, I find to be as follows:

1.  Thomas E. Palmer and wife executed the mortgage to plaintiff in August, 1873, when the husband owned all the lands covered by it.

2.  In September of the same year, T. E. Palmer caused the west forty to be platted, and conveyed by deed of warranty, in which his wife joined, the east "forty" and lot 1 of the west "forty," to Charles H. Palmer; lot 3 he conveyed in the same manner to Anna L. Palmer.

3.  The defendant, Gear, acquired title to the property claimed by him under a mortgage executed by both T. E. & C. H. Palmer and their wives.

4.  The First National Bank of Chariton acquired title to lot 3 under a judgment against both Anna L. and Ann Palmer.

5.  In the view I take of the case, it is not necessary to determine whether the plat of the west "forty" was recorded with the authority or assent of Palmer and wife.

6.  The evidence shows that it was not the purpose of these parties to abandon their homestead claim and right to lot 2 by platting the land, nor to cause it to be regarded as within the city.

7.  They continued to occupy lot 2 as a homestead. While they were not farmers, the land was used by them for meadow, pasture, orchard, and purposes connected with its occupancy as a homestead.

8.  Mrs. Palmer contracted to sell small portions off of lot 2.  The purchasers abandoned the property, and its possession reverted to her.  No deed was made to the parties contracting to purchase it.

9.  In September, 1877, the limits of the city of Chariton were extended so far as to include all the land in controversy.

Other facts of the case, as they do not in my judgment have a controlling influence upon the determination of the case, need not here be recited.

II. The defendants, Gear, and the First National Bank, insist that as T. E. Palmer and wife sold and conveyed the lands, except lot 2 claimed by them as a homestead, they cannot ask that the part they conveyed shall be first sold to satisfy plaintiff's mortgage. The foregoing opinion of the majority of this court adopts this view, affirms the judgment of the court below, and grants relief accordingly. I think the judgment of the District Court should be reversed. The contention here presented in my judgment is determined by the plain language of the Code, § 1993.

"The homestead may be sold for debts created by written contracts, executed by the persons having the power to convey, and expressly stipulating that the homestead is liable therefor, but it shall not in such case be sold except to supply the deficiency remaining after exhausting the other property pleged for the payment of the debt in the same written contract."

Under this provision the homestead cannot be sold upon a mortgage until all other property covered by the instrument has been sold. The meaning and purpose of the statute cannot be made plainer by paraphrase or comment. Nor is it possible to change its meaning without interpolating words not found in it; and this, in effect, must be done, in order to support the construction adopted by the majority of this court. They insist that the property to be first exhausted before the homestead is sold must be owned by the mortgagor when the foreclosure is had. There is not one word in the provision to support this construction; to authorize it, these words must be added to the section, "and owned by the pledgor when the pledge is enforced." We cannot change the meaning of the statutes in this manner.

III. But it is urged in the opinion of the majority that the law cannot contemplate the sale of another man's property for the debt of the mortgagor. It surely does contemplate just such a thing if the ownership of the property is changed. The pledge or mortgage attaches to the property, and is not af-

fected by the change of title afterwards. It is a very common thing to sell "another man's property" in enforcing the liens of mortgages and judgments. The law enters into and becomes a part of all contracts. The purchaser or incumbrancer of property covered by a mortgage which also covers a homestead, contracts, in contemplation of the law, that the land he purchases or acquires a lien upon shall be sold before the homestead. This is all fair dealing. The law provides for the protection of a homestead; the whole world knows it. Purchasers and creditors contract in the light of the law.

IV. But it is said that the statute is made for the protection of the owner of the homestead, only in case he retains ownership of property other than the homestead, and that the law does not permit him to sell this property, and then insist that it shall first be appropriated to the payment of the mortgage debt, for the reason that this would be against equity. When we remember that the purchaser of such property acquires it with notice of the mortgage and subject thereto, and, if he be possessed of ordinary prudence, is controlled as to the price he pays by the existence of the mortgage, the argument based upon equity fails. This case fairly illustrates this observation. Gear's mortgage is to secure more than $6,000; he bid in the land claimed by him upon the foreclosure sale for $500. The land is shown to be worth from $2,600 to $2,800. The Palmers were shown to be insolvent. The homestead is worth $8,000. The bank bid in lot 3 for $490; it is shown to be worth from $800 to $1,000. Its judgment was for about $1,000. Surely the defendants, Gear and the Bank, were controlled in their purchases of the respective tracts of land for less than one-fifth of their value of one tract, and about one-half the value of the other, by the consideration that the mortgage was a subsisting lien thereon. Claiming the lands upon purchases for considerations so inadequate, they do not occupy positions from which they may assail the Palmers on the ground that their claim is inequitable. The Palmers are claiming to hold their homestead free

from the mortgage; the other defendants are endeavoring to do the same thing, as to their property, having paid for it but one-half and one-fifth of its value. We cannot say that the latter have the superior equity.

V. It is insisted that T. E. Palmer and wife, having conveyed the lands now held by Gear and the Bank by deed of warranty, are estopped now from setting up their homestead rights. The claim is that the homestead is made liable on account of warranty deeds of other lands; that the doctrine of estoppel operates to subject the homestead to debts from which it would otherwise be exempt. This position is in direct opposition to the statute. It must be remembered that the homestead is created by statute, and can be made subject to debts only in the manner prescribed by statute. It may be conveyed by the owner, his wife joining in the deed, and may be taken for the payment of debts created by written contracts executed by the owner and his wife, expressly stipulating therefor. Code, § § 1990, 1993. The statute provides no other way for alienating it. Now, the warranty deeds executed by Palmer do not convey the homestead, and do not stipulate that it shall be bound for any debt; they have no relation to, or effect upon, the homestead. If the doctrine of estoppel may be involved in a proper case to defeat a homestead right, it is not applicable to the case before us.

A mortgagor may lawfully convey his lands, and warrant against incumbrances. He does not, by the conveyance, proclaim that the lands are free from incumbrances. The purchasers take the title subject to the incumbrances, and must look to the warranty for protection. I think the position under consideration has no support in principle, and we are referred to no authorities supporting it.

VI. I will now proceed to inquire into the extent of the homestead of defendants. If it is not within a town plat, it may be forty acres or less. Defendants claim that lot 2 containing $26\frac{78}{100}$ acres constitutes their homestead. There can be no doubt that prior to the extension of the city limits all

of the lands were included in the homestead. Did the extension operate to reduce the extent of the homestead? The forty was platted into three lots, and thereby the boundaries of the homestead were fixed. But lot 2, the homestead, was never platted. It cannot be claimed that the platting which designated the lots was a platting of lot 2. There was no streets or alleys designated upon the plat; the lot was simply marked out as a separate tract of land, defendants having always used the land for agricultural purposes. It is true that they are not farmers, but persons of other persuits may use land as this was used, for meadow, pasture, orchards and purposes connected with the homestead.

This point of the case is within the rule twice recognized by this court; namely, that more than one-half acre of agricultural land occupied as a homestead, which has been platted into streets, alleys, and lots, retains its homestead character after it has been included within the city limits. *Finley v. Dietrick et al.*, 12 Iowa, 516; *McDaniel et al. v. Mace et al.*, 47 Id., 509.

It is said that the homestead tract was platted in order to make sales of three small lots referred to in the statement of the facts. There was, in fact, no plat of that tract ever made by defendants. A map of the city was published, which showed certain lots, eight in number, along the south side of the tract, and a street along the west side, but it was done without defendant's knowledge or procurement. Surely defendant's property and rights are not affected by the unauthorized act of another. If the title of lands and their division lines may be affected by published maps, unauthorized by the owners, great injustice would be done to property holders.

If it be conceded that defendants sold the three small lots, the question arises whether, having been a part of the homestead, they should not be subject to sale in the manner prescribed for the sale of the homestead. But this point I need not decide. I think that, as the lots were not con-

veyed and the purchasers abandoned the property, the defendants did not loose their homestead rights therein, for the reason that there was no perfected sale of the property. Defendants, having taken possession of the lots and treated the contracts of sale as forfeited, cannot enforce them, and the purchasers, having abandoned the property, cannot in this proceeding be regarded as owners. If they seek to enforce their contracts and acquire the title to the lots, the question would arise whether the property was subject to the mortgage in the manner insisted upon by the defendants, Gear and the Bank. I think the lots do not loose their homestead character by reason of a contract of sale which has not been performed by the purchaser, but, on the contrary, abandoned by him, and which the other party has treated as forfeited. The testimony shows that it was not the purpose of the parties to execute a contract of sale for two of the lots—the bond for a deed being given as security for improvements to be made upon the property.

I reach the conclusion that the east "forty," and lots one and three of the west "forty," ought to be first exhausted before lot two, the homestead of the mortgagors, is sold. In my opinion the decree of foreclosure should so provide that the lands claimed separately by defendants, Gear and the Bank, should contribute ratably, in proportion to their respective values, to the payment of plaintiff's mortgage, in case they are sold for a sum in excess of the amount found to be due upon plaintiff's mortgage. See *Bates v. Ruddick*, 2 Iowa, 423; *Griffith v. Lovell*, 26 Id., 226; *Barney v. Myers et al.*, 28 Id., 472; *Massie v. Wilson et al.*, 16 Id., 390. It is my opinion that the judgment of the District Court ought to be reversed.

### OPINION ON REHEARING.

DAY, J.—Upon the petition of appellants a rehearing was granted in the foregoing case. The appellee replied to the argument of petitioners, and the cause is again submitted for determination. The case is briefly this: In 1873, T. E. Pal-

mer and wife executed a mortgage upon eighty acres of land, forty acres of which constituted their homestead. Afterward they sub-divided the homestead forty into three lots, designated. as lots 1, 2 and 3. Subsequently, for the expressed consideration of $5,000, they conveyed by warranty deed the forty other than the homestead, and lot No. 1 of the homestead, to C. H. Palmer. At the same time, for the expressed consideration of $3,000, they conveyed by warranty deed lot No. 3 to Anna L. Palmer. T. E. Palmer and wife still retain lot No. 2, and occupy it as a homestead. The plaintiff brings this action to foreclose the mortgage of 1873. The defendants, Palmer and wife, filed a cross-petition, asking that the lands conveyed by them be first sold in satisfaction of the mortgage, and that lot No. 2 be not sold except to satisfy a balance remaining after exhausting the other lands. We cannot regard this request of the defendants in any other sense than as inequitable and unreasonable. The defendants sold the land with the usual covenants of warranty, and, as between the grantor and the grantee, it cannot be maintained that the conveyance was subject to the mortgage. T. E. Palmer, it must be assumed, received a full consideration for the conveyance, and his wife, in legal contemplation, received a sufficient consideration for the release of her dower. What equity is there in permitting them now, after they have received full consideration for an absolute conveyance, to turn upon the grantees and insist that the primary burden of the mortgage shall fall upon them, to the end that they (Palmer and wife) may hold a portion of the mortgaged premises discharged from the mortgage. It is insisted that, if the majority opinion is adhered to, the way is rendered easy for depriving a wife of her homestead, by first inducing her to mortgage it with other lands, and then to convey the other lands. But this apprehended evil is more imaginary than real. The wife may always protect herself from such results by refusing to execute a subsequent conveyance, except as subject to the prior mortgage.

Appellant refers to section 1993 of the Code, and insists that it must be literally construed and enforced. Many authorities have been cited by the appellants which maintain that general words in a statute must receive a general construction, and that, if there be no exception, the court can create none. Upon the other hand, it has been held that it is frequently the duty of courts to restrain, or qualify, or enlarge the ordinary meaning of words, in order to carry into effect the intention of the statute (*Bengett v. Bengett*, 1 Ohio, 207); and that effects and consequences of a construction are to be considered, and where, from a literal interpretation, an effect would follow contrary to the whole intent and spirit of the statute, the intent, and not the literal meaning, must be regarded (*Ryegate v. Wordsboro*, 36 Vt., 746); and that, where a statute will operate unjustly, or absurd consequences will follow, if the literal meaning is taken, the intention as gathered from the whole will prevail (*Exparte Ellis*, 11 Cal., 222; *Ingraham v. Speed*, 30 Miss., 410; *Burch v. Newberry*, 10 N. Y., 374), and that, if following the literal meaning will lead to absurd consequences, the literal meaning will be controlled. *State v. Clark*, 5 Dutch., 96; *Taylor v. Taylor*, 10 Minn., 107; *Donnell v. The State*, 2 Ind., 658; *City of Jeffersonville v. Weems*, 5 Ind., 546; *Benton v. The Mayor*, 28 Ind., 248; *Johnson v. Ballou*, 28 Mich., 379; *Heny v. Tilson*, 17 Vt., 419.

Whatever may be advanced against the propriety of this manner of construction, yet, in order to prevent a failure of justice and avoid absurdities, courts have always been compelled to adopt it, and, perhaps, always will be under the necessity of doing so. The earliest as well as the most striking illustration of the necessity of this mode of construction, is that referred to by Blackstone, in which it was held, although not until after long debate, that the Bolognian law, which enacted "that whosoever drew blood in the streets should be punished with the utmost severity," did not extend

*1. STATUTES: interpretation of: the letter controlled by the intention.*

to a surgeon who opened the vein of a person that fell down in the street with a fit. The same author furnishes another striking illustration in a case put by Cicero, in which it was determined that a law providing that the ship and lading should belong to those who staid in the ship in a storm, did not apply to a sick passenger, who, by reason of his disease, was unable to get out and escape. See 1 Blackstone's Com., page 60.

The appellants cite a number of cases which, they claim, are in conflict with the construction placed upon the statute in the foregoing majority opinion. But, as we understand these cases, they are not in point. They are, for the most part, cases in which it was held that a junior mortgagee of property not included in the homestead, could not require that a senior mortgagee should first exhaust the homestead property, so as to leave the other mortgagee property for the satisfaction of the junior mortgage. The inapplicability of such cases is evident. We have carefully examined the case, and we feel constrained to hold that the original opinion should be adhered to.

AFFIRMED.

BECK, J., adhered to the views expressed in his foregoing dissenting opinion