## WILLIAMS ET AL. v. POOR ET AL.

1. **Township:** DIVISION OF: WHEN COMPLETED FOR PURPOSES OF ELECTIONS: TAX IN AID OF RAILROAD. In § 384 of the Code, relating to the division of a township containing a city or incorporated town, the words "for election purposes" refer only to the election of officers for the new township; and, as the old township organization in such a case continues to exist until the first day of January following the order of the supervisors for the division of the township, all other elections to be held before the first day of January must be by the original township as it was before the division. So *held* in this case, where a tax in aid of a railroad was voted by the whole original township in December, prior to the January when the division of the township, previously ordered, took effect under the statute.

2. **Tax in aid of Railroad:** FIVE PER CENT LIMIT: SECOND TAX WHEN FIRST ABANDONED: STATUTE CONSTRUED. Where in 1877 a certain township voted a five per cent tax in aid of a certain railroad, which was duly levied by the supervisors, and entered on the tax books, and in December, 1878, the electors of the township voted another five per cent tax in aid of another railroad, and in May, 1879, the directors of the first railroad company rescinded and abandoned the tax voted in its favor, and in June following the supervisors canceled said tax, and in September following levied the tax in aid of the second railroad, *held* that the second tax was not void as being in violation of the provision of the statute (Sec. 3, chapter 123, Laws of 1876,) to the effect that the

aggregate of such tax "to be voted or levied" should not exceed five per cent of the assessed value of the property of the township; because, construing the statute with reference to its purpose, the word "or" in the quoted clause should be construed as *and*, and before the second tax was voted *and* levied, the first levy had been set aside.

ADAMS, J., *dissenting*.

## *Appeal from Ringgold Circuit Court.*

### FRIDAY, DECEMBER 12.

ACTION in equity to restrain the collection of a tax voted and levied in aid of the construction of the Leon, Mt. Ayr & Southwestern railroad. Trial to the court, and judgment restraining the collection of the tax. The defendants appeal.

*Laughlin & Campbell* and *W. W. Baldwin*, for appellants.

*Nourse & Kauffman*, for appellees.

SEEVERS, J.—I. The validity of the tax in question is assailed on two grounds. The first to which we turn our attention is based on the following facts: In 1878, Mt. Ayr township embraced the incorporated town of Mt. Ayr, and certain other territory. In April of that year, the board of supervisors, in pursuance of law, divided said township, so that the territory outside of the town should constitute a separate township, to be be known as Poe township. At the general election in October following, officers were duly elected for the township of Poe. The petition for the tax in question was presented to the trustees of Mt. Ayr township in November, 1878. The election was held in December, at the court-house in the township of Mt. Ayr, and the tax was then voted. No election was ordered or held within the territory constituting the township of Poe. Some of the plaintiffs are residents of and tax-payers in the last-named township, and it is insisted that they cannot be compelled to

*Marginal note: 1. TOWNSHIP: division of: when completed for purposes of elections: tax in aid of railroad.*

pay the tax, because no sufficient notice of an election was given, and no election held in the township of Poe. The solution of this question depends on the fact whether, at the time the notice was given and the election held, there was in existence any such organization as the township of Poe. The statute provides that, upon the presentation of the proper petition, the board of supervisors shall divide the township into two townships, " but, except for election purposes, including the appointment of all judges and clerks of election rendered necessary by the change, such division shall not take effect until the first of January ensuing." Code, § 384. Under a similar state of facts, it was held in *Lamb v. Burlington, C. R. & M. R. Co.*, 39 Iowa, 333, that the organization of the new township could not be regarded as complete until the first day of January following the election of the township officers. But it is urged that in that case the meaning of the words " for election purposes" was not determined; and it is insisted that any special election which affects the residents or the tax-payers must be held in the new township.

Section 791 of the Code provides that " the provisions relating to general elections shall govern special elections, except where otherwise provided by law." The election at which the tax was voted was a special election, and, as the general election for the election of officers must be held in the new township, it is insisted that the special election must also be held there. But the statute under which the special election was held provides that the notice therefor " shall specify the time and place" at which it shall be held. It may, therefore, be held at a place other than where the general election is held, unless such place is manifestly unsuitable. Besides this, the words " for election purposes," in section 384, must, we think, be construed to refer alone to the first election of officers in the new township, as defined in the five sections of the Code following section 384. There is no provision of the statute which authorizes or contemplates any election in the new

township, except that for the election of officers, prior to January following such election. As the old township organization continues to exist, all special elections contemplated or authorized by law to be held prior to the contemplated organization of the new, must be held in the old or original township.

II. The second ground upon which it is claimed the tax is illegal is, that the power conferred upon the electors of the township to vote the tax was exhausted when the election was held. The facts are that in 1877 a tax of five per cent was voted upon the taxable property of the township, in aid of the construction of the St. Joseph, Osceola & Des Moines Narrow Gauge railroad, which had been duly levied by the board of supervisors, and entered on the treasurer's books for collection, and the same had not been set aside or annulled on the twenty-eighth day of December, 1878, when the tax in controversy was voted by the electors. In May, 1879, the board of directors of the St. Joseph, Osceola & Des Moines Narrow Gauge Railroad Company passed a resolution rescinding and abandonig the tax voted in aid of said road, and in June following the board of supervisors canceled the tax in pursuance of the said action of the board of directors. Afterwards, in September, 1879, the tax in controversy was levied by the board of supervisors, and shortly thereafter the same was entered on the books of the treasurer for collection. It appears, therefore, that, at the time the tax in question was *voted*, a prior tax of five per cent had been voted by the electors and levied by the board of supervisors, and that the same had not been set aside or abandoned; but that, prior to the *levy* of the tax in question, the prior tax had been set aside, abandoned, and canceled. The tax was voted under the authority conferred by chapter 123 of the Acts of the Sixteenth General Assembly, (McClain's Code, 369,) and it is therein provided that " the aggregate amount of tax to be voted or levied under the provisions of this act in any township       *       *       *

2. TAX in aid of railroad: five per cent limit: second tax when first abandoned: statute construed.

shall not exceed five per centum of the assessed value of the property therein."

The question is fairly presented whether the power to vote a tax has been exhausted when a prior tax, which has been voted and levied, has not been abandoned or canceled; or whether the power is not exhausted until the tax has been levied and becomes a legal charge. In other words, the real question is one of power, and is that exhausted by the vote of the electors? It is said by counsel that the circuit court held that the power was exhausted by the vote, and based the ruling on *Dumphy v. Supervisors of Humboldt Co.*, 58 Iowa, 273. But that case simply holds that, when a tax of five per cent "has been voted, levied and collected," the power is exhausted; and it was said by BECK, J., in that case, that the conclusions reached "are not to be understood as applicable to cases wherein taxes have been voted and levied and afterwards for any cause are abandoned, or cannot be collected." The cited case cannot, therefore, be regarded as decisive of the question to be determined in the present case.

In the construction of a statute, the object, purpose and intent must be considered, and particular words used should be construed with reference to the purpose in view in enacting the statute. The real intent of a statute, if it can with reasonable certainty be ascertained, will prevail over the literal sense of the words employed. *District Township v. Dubuque*, 7 Iowa, 262; *Tully v. Beaubien*, 10 Id., 187; *Dilger v. Palmer*, 60 Id., 117. The primary object of the statute under consideration was to enable the people of a city or township, by the imposition of a tax on their property, to so materially contribute to the construction of a railroad that the same would be, within a time fixed by the electors, completed and operated to some point so near such township or city as to, in the judgment of the electors, be beneficial to them. To merely vote a tax, or to vote that a certain amount should be raised by taxation, would never accomplish such a result. While, under the statute, it is essential that the tax

should be voted, this alone does not create a tax. Before there can be, in any just sense, a tax, there must be a levy. The statute under consideration provides that the board of supervisors shall " levy such taxes as are voted." When this is done, and not until then, is there a charge on the property of any individual. The levy is just as essential to the validity of the tax as the vote. In fact, if there was no levy by the proper authority, the tax and all proceedings based thereon would be invalid and absolutely void. *McCready v. Sexton*, 29 Iowa, 356; *Early v. Whittingham*, 43 Id., 162. Until the levy, it cannot be said that there was a tax in existence; yet the statute speaks of voting a tax. The latter word is used simply as a convenient name given the subject-matter, to be brought into existence by the statute or power conferred. The statute does not mean that the simple vote, without more, creates a tax. So, when the statute provides that the aggregate amount of tax to *be voted or levied* shall not exceed five per cent, it simply means that the amount which may be: contributed to the designated purpose shall not exceed the amount named.

The statute should be construed as if written thus: The aggregate amount of tax " to be voted *and* levied" shall not exceed five per cent. In the construction of statutes, the words " and" and " or" are convertible, as the sense may require, even in a criminal statute, where a strict construction usually prevails. *State v. Myers*, 10 Iowa, 448; *State v. Brandt*, 41 Id., 593. In *Boyles v. McMurphy*, 55 Ill., 236, " or" was construed as " and." In favor of this construction several reasons may be given: (1) Because, as has been shown, there cannot be any aggregate amount of taxes until the essential requisites of the power of taxation have been executed. (2) If the vote exhausts the power, then the spirit, meaning and intent of the statute will be nullified; because it must follow, if the statute is literally construed, that the electors can vote but one five per cent tax, although the road in aid of which the tax was voted is never constructed, and

has been wholly abandoned. And (3) if the vote exhausts the power, then it matters not if the election was illegally held, and the tax voted absolutely void. If the power is exhausted by the vote, then the electors must know before the election that, if aid is voted, the road will certainly be constructed. This never can be known with certainty; and it is well known that many railroads, when prospected, were experiments, but are now prosperous corporations. Many other prospected enterprises have failed to be constructed, and it is probable that such will be the case in the future. The electors can readily protect themselves by providing that no part of the tax shall become due and payable until the road is completed. They then get that for which they contracted. This was done in this case. The road was constructed, and the plaintiffs had knowledge that this was being done on the faith that the tax voted by them would be paid; but they took no steps to have the tax declared illegal until after the road was constructed, and they were daily receiving the advantages which constituted the inducement to them in voting the tax. Cogent, equitable reasons, therefore, impel us to say that we are not disposed to be astute in finding a technicality upon which to base the deduction that the tax in question is not collectible.

When the tax in question was levied, no other tax in aid of a railroad was in existence. Therefore, the aggregate of taxes never exceeded five per cent, and we are content to rest our conclusion on the construction of the statute which we have adopted.

REVERSED.

ADAMS, J., *dissenting.* Where a tax of five per cent has been voted and levied, as in this case, I do not think that the electors of the township have power to vote an additional tax until the former levy has been set aside, or the tax, for some reason, has become uncollectible. The majority seems to treat the vote in question as a provisional vote; that is, a

vote that was to become binding if the former valid tax should be set aside. But I know of no law by which the electors can properly be called upon to vote provisionally. If this can be done once, it can be done any number of times. I think that the election was irregular, and cannot, for that reason, be deemed a fair exposition of the will of the electors.