## CRABELL, ADM'R, v. THE WAPELLO COAL CO.

1. **Mines and Mining:** CRIMINAL STATUTE: INTERPRETATION. Section 15, chapter 202, Laws of 1880, was designed to prevent intermeddlers from doing the things therein prohibited, and not to prevent employes from performing duties which are included within the letter of the statute. Accordingly, it is not unlawful for the conductor of a train of cars in a coal mine to ride thereon in the performance of his duty.

2. ———: INJURY TO CONDUCTOR OF TRAIN: NEGLIGENCE: QUESTION FOR JURY. Plaintiff's intestate was killed while riding on the front end of a coal car in a mining train of which he was conductor. The evidence was conflicting as to whether he chose the safest place to ride, or whether he was guilty of contributory negligence. *Held* that it was properly submitted to the jury.

3. ———: ———: WAIVER OF NEGLIGENCE. Before a miner can be held to have waived defects in the construction of the mine in which he was employed by continuing to work therein, he must have had reasonable time and opportunity to become acquainted with them, and with their bearing upon the hazards of his employment.

*Appeal from Wapello District Court.*

THURSDAY, APRIL 23.

ACTION to recover damages for the death of plaintiff's son, who was killed in the coal mine of the defendant because of the alleged negligence of the defendant. Trial by jury. Verdict and judgment for the plaintiff. The defendant appeals.

*McNett & Tisdale*, for appellant

*Stiles & Beaman*, for appellee.

SEEVERS, J.—There was an entry or slope into the mine which was several hundred feet in length. When cars were loaded in the rooms, they were drawn by mules to the slope, and from six to ten cars were then hitched together, and drawn out of the mine to the dump by an engine located out-

side of the mine. The train, when so made up and hauled out, was known as the "trip," and the person in charge was called the conductor of the trip. At the time the plaintiff's son was killed he was acting as such conductor, and was riding on the front car, which was loaded with coal.

I. It is insisted that the plaintiff cannot recover because there was, at the time of the accident, a statute in force 1. MINES and which prohibited all persons from riding on such mining: criminal statute: cars, and making it a misdemeanor to do so. The interpretation. statute in question is chapter 202 of the Acts of the Eighteenth General Assembly, entitled "An act to regulate mines and mining." It provides for the appointment of a state mine inspector, and defines his duties. The act also provides the manner of opening new mines and operating those in existence, and its primary object is the protection of mines, miners and operators. Section 15 of the act is as follows: "Any miner, workmen, or any other person, who shall knowingly injure or interfere with any air-course or brattice, or obstruct or throw open doors, or disturb any part of the machinery, or disobey any order given in carrying out the provisions of this act, or ride upon a loaded car or wagon in a shaft or slope, or do any act whereby the lives and health of the persons, or the security of the mines and machinery, is endangered; or if any miner or person employed in any mine governed by the provisions of this act shall neglect or refuse to securely prop or support the roof and entries under his control, or neglect or refuse to obey any order given by the superintendent in relation to the security of the mine under his ·charge or control,—every such person shall be deemed guilty of a misdemeanor," and punished as prescribed in the statute.

Counsel for the appellant contend that there is no ambiguity in the statute, and that the deceased clearly comes within the language of it. They further contend that, while in construing a statute the intention of the legislature should be sought, yet that no construction can be adopted which conflicts with,

or renders nugatory, the language, or a material portion of it, used to express the legislative thought. On the other hand, the counsel for the appellee contend that the statute should not be so construed as to apply to a person who is engaged in the performance of a necessary duty, and that the context and the whole statute should be considered for the purpose of determining its meaning.

It appears from the evidence that some person always accompanied the cars when trips were made. This was not only proper, but essential. The cars frequently got off the track, and other accidents were liable to occur, and it was the duty of the person in charge to prevent such accidents if he could, and promptly give notice to the engineer in charge of the engine, and other employes, when one occurred. At the time he was killed, the deceased was employed in the discharge of such duty, as directed by defendant's superintendent. The language of the statute is broad and comprehensive, and the deceased was clearly within the letter, but this does not conclusively establish that he was within the intent, of the statute. One of the cardinal rules for the construction of statutes is to search out the intent of the legislature, and adopt the sense which will be in harmony with the statute as a whole. The meaning of certain words, when read alone, may be entirely clear, but when the context is read, and the object of the statute is ascertained, there may not only be ambiguity in the particular words, but an entirely different meaning correctly adopted than would have been proper if the particular words stood alone. Another rule of construction is that a "thing within the intention is within the statute, though not within the letter, and a thing not within the letter is not within the statute unless within the intention." Potter's Dwar. St., 144. The inquiry, therefore, is whether it was the intent of the legislature that, although the decedent was in the performance of a necessary duty which the defendant required him to perform, he should be punished criminally for such an act. It will be observed

that a person who distrubs any part of the machinery is guilty of a misdemeanor. Does this apply to the engineer who makes necessary repairs? Clearly not. So one who obstructs or thows open doors is guilty of a crime, it matters not how necessary or essential it may have been to do so for the safety of the mine or miners. Such a literal construction cannot be adopted. The object and intent of the statute was to punish the intermeddler for doing the prohibited things, and such a person, for the purpose of this case, may be conceded to be any one, although he may be a miner or other employe, who does that which it was not his duty to do. It may be conceded that any employe other than the conductor of the trip would be liable to the penalty prescribed by the statute, who rides on a loaded car.

Counsel for appellee suggest a pertinent inquiry. Suppose a statute made it a misdemdanor for any person to stand upon the platform of a car forming a part of a passenger train drawn by an engine, would such a statute embrace and be held applicable to a brakeman, whose duty it was to set the brakes, and who therefore must necessarily ride on the platform for at least a time? We are clearly of the opinion that it would not, and yet he clearly would be within the letter of the statute. Possibly it is within the power of the legislature to make one guilty of a misdemeanor when engaged in the performance of a necessary duty, but in such case the language used should be clear and undoubted, and such a statute would probably, in express terms, prohibit the performance of the supposed duty in a particular manner; and it may well be supposed that, if it had been the legislative intent to include conductors of trips, it would have been so said in express terms.

The statute in question was amended by the enactment of chapter 21 of the Acts of the Twentieth General Assembly, and section fifteen thereof is substantially indentical with the same section in the statute we have been considering, except that it therein is expressly provided that it shall not

apply to the "conductor in charge of the train." Counsel for the appellant contend that this amounts to a legislative interpretation of the prior statute, that the conductor is within such statute, and, on the other hand, counsel for the appellee contend that the subsequent statute clearly indicates that the latest expression of the legislature was merely by the use of appropriate words to indicate the intent of the prior statute. We are unable to see that the subsequent statute is of controlling importance, or that it has an appreciable effect, in the construction of the prior statute.

II. The deceased was riding on the front end of the car, and in so doing it is insisted that he was guilty of such contributory negligence as will prevent a recovery. In considering this question it is proper to assume that the instructions are correct. This being so, we are substantially asked to hold, as a matter of law, that the deceased was guilty of such negligence as will prevent a recovery. This we cannot do. There was a conflict in the evidence as to what was the proper position for the conductor. There was some danger to be apprehended if he rode on either end of the train. If on the forward end, he was in a position to discover at least some kind of accidents more readily than if he was in the rear. We think this was a question for the jury, inasmuch as the evidence as to the proper place for the conductor to ride was conflicting. This is true as to the negligence of the defendant in constructing the slope. The precise cause of the accident we are unable, from the evidence, to determine; but the probability is that the deceased came in contact with the top or sides of the slope, and was thrown on the track, and the cars passed over or crushed him. There is some evidence so tending, and there is evidence tending to show that the slope was in some respects improperly constructed. We have examined the evidence carefully, and are forced to the conclusion that it was for the jury to say whether the defendant was negligent.

III. Objections are stated, but not pressed on our atten-

tion in argument, to certain evidence that was admitted, to
3. ——: ——: which the defendant objected.    We deem it suf-
ficient to say that we do not think any of the
objections are well taken.    The deceased had prior to the
accident been employed in the mine.    His particular employ-
ment was to drive a mule used in hauling loaded cars from
the rooms to the slope.    Counsel for the defendant asked a
witness the following question: "You may state whether it
requires more skill, or different skill, to conduct a train of
cars than to drive a mule through the entries of the mine."
An objection to this question was correctly sustained.    The
evidence sought to be elicted had, in our opinion, no possible
bearing on any issue in the case.

IV.    The fifth, sixth and seventh paragraphs of the
charge are objected to.    We do not deem it necessary to set
them out.    In our judgment they are clearly cor-
rect.    The eighteenth paragraph of the charge is
as follows: "The fact that an employe knows, or could know
by the exercise of ordinary care, of defects in the appliances
about which he works, which render his employment or
duties more than ordinarily hazardous, or increases the hazard,
and still remains in the employment until he is injured, tends
to show contributory negligence, but is not conclusive evi-
dence of it."    The latter part of this instruction is objected to.
The instruction seems to confound contributory negligence
with waiver.    While counsel call attention to this fact, they do
not claim that the instruction is prejudicially erroneous in
this respect.    Their contention is that the matters stated are
conclusive evidence of waiver, instead of simply so tending,
as the court thought.    As applied to the uncontroverted evi-
dence in this case, we are unable to say that the instruction
is prejudicially erroneous.    The deceased never had acted as
conductor until the morning he was killed.    He had not
made more than one or two trips.    We therefore do not
think that it should be conclusively presumed that he waived
defects in the construction of the slope.    At least some period

*Margin note: 3. ——: —— waiver of negligence.*

*Margin note: THE SAME.*

of the time must be given for observation, and while, by reason of his previous employment in the mine, it should be presumed that he had a general knowledge of the condition of the slope as it bore on his employment, it does not follow that he was conversant with the dangers and hazards which a conductor would incur in the performance of his duties. We are of the opinion that the instruction is correct, and that the judgment of the district court must be

AFFIRMED.