76  141
82  715

## THE STATE v. GURLAGH.

1.  **Grand Jury:** VACANCIES IN PANEL : HOW FILLED. Under section 4256 of the Code, as amended by chapter 42, Laws of 1886, where twelve persons were summoned and appeared as grand jurors, and the clerk selected seven by lot to constitute the panel, but prior to the impaneling of this jury, and before the others of the twelve had been discharged, one of the seven was excused, *held* that it was proper for the sheriff to fill the panel, under the order of the court, by selecting for that purpose one of the twelve who had not been drawn by the lot of the clerk. [ROBINSON, J., and SEEVERS, CH. J., *dissenting.*]

2.  **Liquor Nuisance :** INDICTMENT : DESCRIPTION OF PROPERTY : VARIANCE. An indictment for keeping a liquor nuisance alleged that it was kept in a three-story building. *Held* that this was sustained by proof that the liquors were kept by defendant in a one-story addition to a three-story building, the first story of which was used by his mother as a cigar-store and restaurant, and that the mother also used the addition as a kitchen, and that customers passed through the three-story part to the room where the liquors were kept.

*Appeal from Wapello District Court.*—HON. CHAS. D. LEGGETT, Judge.

FILED, OCTOBER 30, 1888.

DEFENDANT was indicted and convicted of keeping a nuisance by maintaining a place for the sale of intoxicating liquors. He now appeals to this court.

*Williams & Jacques*, for appellant.

*A. J. Baker*, Attorney General, for the State.

BECK, J.—I. A motion by defendant to set aside the indictment was overruled. This decision is now made the ground of complaint. The facts involved in this point are these: On the first day of the term twelve grand jurors

1. GRAND JURY: vacancies in panel: how filled.

appeared ; having been summoned under the provision of chapter 42, Acts Twenty-First General Assembly, amending and changing the section of the Code relating to grand jurors, their number, etc. The offense charged in the indictment was committed after that statute went into effect. From the jurors appearing, the clerk selected seven by lot. Prior to impaneling the grand jury, one of the jurors was excused. The other persons not drawn had not been discharged. The sheriff, being so directed by the court, selected one of the jurors not drawn to take the place of the juror excused. The grand jury, constituted of the six jurors not discharged and the one selected by the sheriff, was then impaneled and sworn. The defendant insists that the grand jury was not legally constituted, for the reason that the jury was filled after one had been excused, by the selection of the sheriff, and not by drawing from the list of jurors. Code, section 4256, as amended by chapter 42, Acts Twenty-First General Assembly, is in the following language : " At a term of court at which grand jurors are required to appear, the panel shall be called, and the names of the grand jurors appearing shall be entered upon the record. From the number of jurors thus summoned and appearing the clerk shall select, by lot, the required number. If more grand jurors have appeared than the number required to fill the panel, the remaining number shall be discharged for the term. If from any cause, either then or afterwards, the number of the panel be reduced to a less number than required, the court may order the sheriff of the county to summon a sufficient number of qualified persons to complete the panel." The last sentence directs the sheriff, upon the order of the court, to fill the panel when the number thereof is reduced for any cause at the time of the drawing of the jurors or afterwards. This is a positive and plain direction, which we think will admit of no other interpretation. Some doubt on this point possibly may arise, in view of the fact that the word "panel" in the first sentence of the section is applied to the whole

number of jurors summoned. But in the other sentences the word is used twice, and is applied to the jurors selected by the clerk by lot. .The word, being applied to both, must be held to mean the one or the other, according to the connection in which it is used. It is applied in the last two sentences to the selected jurors, and, under the plain language of the section, a vacancy in their number, or the place of one excused, is to be filled by the sheriff. We think the district court rightly overruled the motion to set aside the indictment.

II. The indictment alleges that the nuisance was kept in a three-story brick building. The defendant

2. Liquor nuisance: indictment: description of property: variance. insists that the proof varies from this allegation, in that it shows the nuisance was maintained in a one-story addition to a three-story building, and that defendant's mother occupied the three-story part of the building. But the evidence shows that the room in which the liquors were kept has a door into the other part of the house occupied by the mother, and is used in common by both as a kitchen. The three-story part or the first floor is used by the mother as a cigar-stand and restaurant. It appears to us that the evidence supports the conclusion that the three-story part of the house, as well as the one-story part, was used in maintaining the nuisance ; inasmuch as customers passed through the three-story part to reach the little room in which the liquors were kept. No other questions arise in the case. The judgment of the district court is    AFFIRMED.

ROBINSON, J., ( *dissenting.*)—I am unable to assent to the construction which the foregoing opinion places upon section 4256 of the Code, as amended. It was said in *Noble v. State*, 1 G. Greene, 330, that "the intention of the legislature is the leading, and indeed the only, object to be inquired into by a court in construing legislative enactments. * * * Where the object of the law-makers may be collected from prior existing laws, and from the expressed language of many other sections, * * * we may be justified in giving a construction

contrary to the literal applications of the words. It frequently becomes the duty of courts, in giving effect to the manifest intention of a statute, to restrain, enlarge, or qualify the ordinary and literal meaning of the words used." In *Williams v. Poor*, 65 Iowa, 414, the court said: "The real intent of a statute, if it can with reasonable certainty be ascertained, will prevail over the literal sense of the words employed." The rule of construction announced in those cases has been frequently approved. *Crabell v. Wapello Coal Co.*, 68 Iowa, 753; *Dilger v. Palmer*, 60 Iowa, 130; *State v. Sherman*, 46 Iowa, 420; *Tully v. Beaubien*, 10 Iowa, 188. See, also, Sedg. St. & Const. Law, 194-197, 325. Courts have carried the rule so far as to give to words a meaning contrary to that usually applied to them. *Williams v. Poor*, 65 Iowa, 415, and cases therein cited; *Oltrogge v. Schutte*, 51 Iowa, 280; Sedg. St. & Const. Law, 254. In order to ascertain the legislative intent, it is proper to consider the statute as a whole, together with other statutes relating to the same subject, antecedent and contemporaneous legislation, the defect which the statute was designed to supply, and the remedy which it was designed to give. *Woods v. Mains*, 1 G. Greene, 292; *Haskel v. City of Burlington*, 30 Iowa, 233; *Stephens v. D. & St. P. Ry. Co.*, 36 Iowa, 328; Sedg. St. & Const. Law, 325. By an examination of the statutes in force prior to the enactment of chapter 42 of the Acts of the Twenty-First General Assembly, we find that the provisions relating to grand juries were designed to secure impartial jurors, and to prevent their selection by improper or interested persons. In each county a jury-list of seventy-five qualified persons was prepared each year. Every election precinct furnished its due proportion of this list. From this list fifteen persons were selected by lot, the auditor, clerk and sheriff coöperating to prevent mistakes and secure an impartial drawing; and the persons so selected were designed to constitute the grand jury for the ensuing year. But it was found that in many cases some of the persons so selected could not attend, or were excused from service,

and that their places had to be filled by persons selected by the sheriff, for the reason that only the number required to constitute a grand jury was originally drawn, leaving no reserve from which to draw to fill vacancies. Since no indictment could be found without the concurrence of twelve jurors, it sometimes happened that it was within the power of the sheriff to prevent the finding of an indictment in a given case or class of cases, by filling the panel with persons whose opinions or sympathies would lead them to oppose such action. In other cases it would be within his power to unduly influence the finding of an indictment by filling the panel with persons who would be apt to favor it. These are matters of common knowledge. It is manifest that it was for the good of the public, and for the protection of the sheriff, that these powers should be taken away so far as was practicable. In my opinion, chapter 42 of the Acts of the Twenty-First General Assembly, was in part designed to accomplish that object. Its second section provides that not more than one grand juror should be drawn from any one township, excepting in cases where the number of persons to be drawn was greater than the number of townships from which they were to be taken. No doubt one purpose of this provision was to secure juries which should be independent of local prejudices and influences. The act under consideration reduces the number of persons required to constitute a grand jury, and provides that, when it is to consist of seven jurors, twelve shall be drawn, and, where it is to consist of but five, eight shall be drawn. When the grand jury is composed of seven members, an indictment cannot be found without the concurrence of five; and, when it is composed of five, four must concur. The real question to determine is the purpose for which the extra jurors are drawn. The foregoing opinion holds, in effect, that they are drawn to secure the attendance of not less than the number of jurors fixed by law for the panel, and that all in excess of that number may be dismissed before a single juror has been

accepted ; for it will be observed that the sheriff is not
required by the statute to summon any of the jurors
drawn by the clerk.   It is true he did, as in this case ;
but it was his right to summon any other qualified per-
son.  But there is as much reason to require a vacancy,
caused by excusing a juror, to be filled by lot, as there
is for requiring a vacancy caused by the failure of a
juror to attend to be so filled.   Hence a construction
which would apply different rules to the two classes of
cases should be avoided, if practicable. The only substan-
tial change in section 4256 of the Code, made by chapter
42 of the Acts of the Twenty-First General Assembly, is
included in the following provisions :   " From the num-
ber of jurors thus summoned and appearing the clerk
shall select, by lot, the required number.  If more
grand jurors have appeared than the number required
to fill the panel, the remaining number shall be dis-
charged for the term."   The first of these provisions is
so far incomplete as to require the aid of construction
to determine its meaning.   What is the " required num-
ber " the clerk is to select by lot ?   To me it seems evi-
dent that it is the number required to complete the
grand jury, and who are actually accepted for that pur-
pose.   This view is confirmed by the remaining provis-
ions of the amendment, which requires the discharge of
those grand jurors who have appeared, but are not
required to fill the panel.   The panel cannot be said to
be filled, within the meaning of the statute, until all the
jurors required by law have been accepted.   Hence
if seven jurors are required and selected by the
clerk, but one of them is excused, the panel is not filled,
and the required number of jurors has not been drawn.
The opinion of the majority seems to be based upon the
last provision of section 4256 aforesaid, as amended.
But that provision was in substance contained in the
section before it was amended ; hence, if it is inconsist-
ent with the amendment, it is modified by it.   But it
seems to me to be in entire harmony with the amend-
ment, and to be designed to authorize the sheriff to fill
the panel only after the clerk has exhausted the list of

jurors who were originally drawn, and who have appeared. In my opinion this construction is fully authorized by the language of the section as amended, and would carry into effect the evident intention of the general assembly.

SEEVERS, C. J., concurs in this dissent.