[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 376 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 377 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 378 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 379 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 380 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 381 
Assuming that on the 30th of April, 1845, when Newbury Burch dissolved their copartnership at Chicago, Isaac H. Burch and Thomas Burch were joint *Page 382 
owners of the two notes made by Newbury Burch, and which I.H. Burch had shortly before taken up of the banks which had discounted them, and that I.H. Burch and Thomas Burch held them as creditors of the firm of Newbury Burch, I am unable to perceive anything in the case to charge the firm of Newbury 
Burch, or either of its members, in favor of the plaintiff, legally or equitably, with any part of the loss which subsequently arose upon the failure of the house of John T. Smith Co. The firm of Newbury Burch had been carrying on the business of exchange brokers at Chicago, and continued such business up to the time of their dissolution. An important branch, if not the principal part of their business, was selling sight drafts on the city of New-York and other distant places, and buying time drafts upon the same. It was indispensable to the success of such business that an agency be established in New-York provided with sufficient funds for the purpose of duly honoring and promptly paying their drafts. They had accordingly made arrangements with the house of John T. Smith Co., of New-York, with that view. At the time of the transaction, when their partnership was dissolved, they had, as they supposed, in the hands of Smith Co., funds for which they could draw at sight, to the amount of $3000, and drafts on time which they had purchased and forwarded to them for collection, and which would mature at various periods from the fifteenth of May to the thirteenth of June following, equal in value to $7961.48, which Smith Co. were authorized to sell, if necessary to keep their accounts good, and against which they could also draw, if necessary. Smith Co. were in good credit, paying all drafts which Newbury Burch made upon them and had proved prompt and valuable correspondents. This firm was being dissolved, to be succeeded the next day by the new firm of I.H. Burch Co., in the same business, at the same place. It would be natural, therefore, that Isaac H. Burch, who had been one of the old firm, and who was to be one *Page 383 
and the active business member of the new firm, should desire to secure to the latter the advantages of these New-York facilities; and that he would regard the funds in the hands of Smith Co. more beneficial to the new firm than the same amount of specie in Chicago. It is certainly not to be supposed that either Newbury or I.H. Burch considered these funds or this credit with Smith 
Co. of any less value than that at which they were estimated in the transaction between them. Newbury was retiring from the business, and had no motive to retain an interest in them. The arrangement was accordingly consummated. The two $5000 notes were canceled, and the New-York funds transferred by Newbury Burch to I.H. Burch Co., and the next day the firm of I.H. Burch 
Co., which then came into existence, took up the business as Newbury Burch had left it, and carried it on, as they had done, with the house of Smith Co., until that house failed on the sixteenth of the same month. Up to that day Smith Co. were in full credit, paying all drafts properly made upon them. The $3000 draft of Newbury Burch to the order of I.H. Burch Co., and the order for the drafts previously sent by the former to Smith 
Co. for collection, were received by Smith Co., on the eighth or ninth of May, and the draft placed to the credit, on the books of Smith Co., of I.H. Burch Co. So far, all was satisfactory to I.H. Burch Co. It was precisely what they wanted. With respect to the order, they did not desire to get the drafts to which it related out of the hands of Smith Co. into their own, but wished merely to be placed in the same relation to them which Newbury Burch had occupied, and to that end they directed J.T. Smith Co. to hold them for collection for their account, as they had done for Newbury Burch. There is no reason to doubt that Smith Co. would have paid over to I.H. Burch Co. the amount of those sold if they had been requested to do so, and delivered the one which had not been sold, upon like request, any *Page 384 
time after the order was made, and before they stopped business. But this I.H. Burch Co. did not desire. They had no motive for changing their New-York correspondents and agents. If they had, there was time enough, after they received the order, and before the failure of Smith Co., to have done so. They retained Smith Co., as their agents, voluntarily, and at their own risk. No fraud or bad faith is chargeable to Newbury, and there is nothing in the case to justify an inference that Newbury Burch, or either of them, were expected, or intended, or did in fact in any way guarantee the responsibility of Smith Co.; and there is evidence which, to my mind, is abundant to show that Newbury 
Burch were to be entirely discharged from the two $5000 notes; and if that was the understanding, there is nothing left of the plaintiff's claim.
Admitting that the transaction at Chicago on the thirtieth of April, respecting the two $5000 notes of Newbury Burch, and their draft and order on J.T. Smith Co., is to be regarded as between I.H. Burch Co. of the one part, and Newbury Burch of the other, Isaac H. Burch is to be deemed as acting, and duly empowered to act, for himself and the plaintiff. It was, in substance, a purchase by I.H. Burch Co. of the New-York city funds, with a view to their future business, and clearly within the scope of their partnership. No doubt can be entertained, that all the title and interest, both legal and equitable, of Newbury Burch in and to the drafts mentioned in the order, or, if any of them were sold, in and to the proceeds of the sales in the hands of Smith Co., were, by force of the order and the concurrent acts of the parties connected with it, completely transferred to and absolutely vested in Isaac H. Burch and the plaintiff, who thereby succeeded to all the rights of Newbury 
Burch to the drafts and their avails. The operation of the order was an equitable, and I think a legal, assignment to I.H. Burch and the plaintiff of the drafts specified in it, and their avails, in the hands of Smith Co. *Page 385 
The only guaranty on the part of Newbury Burch which could on any principle result or be implied from the transaction, was, that the demand or thing assigned was what it purported to be, a valid, subsisting demand. Upon that subject, there is nothing in the allegations or proofs to show the contrary, or that any sufficient reason existed why Smith Co. should not comply with the requirements of the order.
In case an action should become necessary against Smith Co., to recover the drafts or their avails, or against the parties liable upon the drafts not sold to collect their amounts from such parties, Isaac H. Burch and the plaintiff would be the proper persons to make plaintiffs in such action. The order was not a bill of exchange, being drawn, not for money generally, but for the specific drafts mentioned; or, in the alternative of the drafts or any of them having been converted into money, then for the payment of that money. A bill of exchange in its proper, legal sense, is for the payment, at all events, in money of a sum certain, and must not be in the alternative, or payable out of a particular fund; and in order to give the holder a right of action upon it, against the payee, must be accepted by the drawee. None of these characteristics appertain to the order in question. If it had been a bill of exchange, in the sense described, it would not have operated as an assignment of any funds in Smith Co's. hands, to I.H. Burch Co., and the only way in which Newbury Burch, the drawers, could have been made liable upon it would have been by a regular protest for non-acceptance or non-payment, or something equivalent thereto. I have remarked that Isaac H. Burch and the plaintiff would be the proper parties' plaintiff in an action against Smith Co. to recover the drafts or their proceeds. By this I do not mean that an action would lie in their favor upon the order, but that they could maintain it as purchasers and assignees of Newbury Burch of the drafts, or the moneys received upon their sale by *Page 386 
Smith Co. It would have been the duty of Smith Co., after they received the order, or had notice of it, to hold the drafts or their proceeds, if all or any of them were sold, in special deposit, subject to the order of I.H. Burch Co.; and equity will hold, that what should have been was done — and if that was done, Smith Co., would be regarded, in relation to the drafts or their proceeds, as holding the relation of bailees of I.H. Burch Co. only, and none whatever to Newbury Burch.
The case was ably examined in the supreme court, and the decision, dismissing the bill, was placed upon several grounds. The view I have presented seems to me to be the most favorable that can be taken for the plaintiff; and if I am correct, he has shown no ground for any relief against the defendant Newbury, who alone defends; and the bill, as to him, was properly dismissed.
I think the judgment of the supreme court should be affirmed, with costs.