Burket, J.
In argument it is claimed that the act of May 21, 1894,-entitled “An act to establish *3 a court of insolvency in counties containing a city of the first grade of the first class, and for the relief of the probate court in such counties, ”91 Ohio Laws, 844, is unconstitutional, for the reason that said act attempts, as is claimed, to confer jurisdiction on said court of insolvency and upon the judge thereof, which by the constitution belongs exclusively to the probate court.
The act in question, by its first section, establishes the court of insolvency, to consist of one judge to be- elected by the electors of such county.
By the ninth section, the court of insolvency is given original jurisdiction in all cases, matters and things relating to the administration of assignments in trust for the benefit of creditors. And it is therein provided that the court of insolvency, shall have, in every respect, the same jurisdiction, possess the same powers, discharge the same duties, and incur the same penalties as are now or may hereafter be enforced or enjoined by the constitution and laws of the state upon the judge of the probate court. The judge of the probate court is authorized to transfer to the court of insolvency any and all cases now pending in the probate court arising under the act regulating the mode of administering assignments in trust for the benefit of creditors; and all laws now in force or that may hereafter be enacted, regulating the mode and manner of proceedings in such cases by the probate court, shall be held and deemed to extend to the court of insolvency.
By the tenth section the probate judge is authorized to transfer to the court of insolvency in his county, any other case or cases which in his opinion the business of the probate court may require, such case or cases when so transferred to *4 be thenceforth considered in the court of insolvency, and to be proceeded in as if the same had been originally commenced in that court, and after such removal such case shall not be considered in the probate court, and all laws now in force or hereafter enacted, regulating the-mode.and manner of procedure in- such cases by the probate court, are to be held and deemed to extend to the court of insolvency, unless the same are or shall be plainly inapplicable.
By the twelfth section,, all laws conferring powers, authority and jurisdiction in cases and proceeding’s, upon the probate court, giving such court power to hear and determine cases and to preserve order and punish contempt, regulating’ the practice and forms of process, prescribing the force and effect of the judgments, orders and decrees, and authorizing or directing the execution thereof, are to be held and deemed to extend to the court of insolvency as fully as they extend to the probate court, unless the same are - inconsistent with this act, or plainly inapplicable.
The fourteenth section provides that in case of the absence or disability of the judge of the probate court, that court may be held by the judge of the court of insolvency.
■ The fifteenth section provides that in case of the absence or disability of the judge of the court of insolvency, such court may be held by the probate judge..
These are the only sections pointed out as conflicting with the constitution of this state.
Is any of the power, jurisdiction, authority or duty, by this act conferred upon the judge of the court of insolvency, within the exclusive jurisdiction of.the .probate court under the constitution?
*5 Section eight, of article IV, of the constitution is in these words : “The -probate court shall have jurisdiction in probate and testamentary matters, the appointment of administrators and guardians, the settlement of the accounts of executors, administrators and guardians, and such jurisdiction in habeas corpus, the issuing of marriag’e licenses, and for the sale-of land by executors, administrators and guardians, and such other jurisdiction, in any county or counties, as may be provided by law.”
While this section gives jurisdiction to the probate court in probate and testamentary matters, the appointment of administrators and guardians, the settlement of the accounts of executors, administrators and guardians, it does not say that such jurisdiction shall be exclusive. And the various decisions of this court holding such jurisdiction to be exclusive, are based upon the statute which expressly makes the jurisdiction in that regard exclusive. We find no case holding that this section of the constitution confers exclusive jurisdiction upon the probate court.
In the case of Hagany v. Cohnen, 29 Ohio St., 82, this court held that the act -of January 9, 1871, conferring jurisdiction upon courts of common pleas .to .appoint guardians of the property of persons incapable of taking care of and preserving their property by reason of intemperance and habitual drunkenness, is not in conflict with this section of the constitution. From that case it clearly appears that this court, as then constituted, did not reg’ard the jurisdiction of probate courts exclusive as to the appointment of guardians.
That the g’eneral assembly does not construe said section of the constitution as conferring ex- *6 elusive jurisdiction, is shown by section 535, Revised Statutes, in which the jurisdiction, in all probate and guardian matters, in which the probate judge is interested, is conferred upon the court of common pleas. This provision was in the statute of 1853 organizing the probate court. In 1854 such jurisdiction was transferred from the court of common pleas to the probate judge of an adjoining county. In 1863 it was restored to the court of common pleas, where it has ever since remained. A like legislative construction is found in section 524, which confers jurisdiction upon the judges of the court of common pleas to take proof of wills -and approve bonds in case of sickness or unavoidable absence of the probate judge.
But as this question of exclusive jurisdiction under the constitution is one of great importance, and was not fully argued, it is thought best not to pass upon it in this case. Aside from that consideration, it is pérfectly clear that the general assembly has ample power, under the constitution, to establish a court of insolvency, and to confer upon such court jurisdiction in the administration of assignments in trust for the benefit of creditors; to make inquests of the amount of compensation to-be made to the owners of real estate, when appropriated by corporations; to hear and determine cases for the sale of lands by executors, administrators and guardians ; for the completion of real contracts on petition of executors and administrators ; in habeas corpus; and to grant marriage licenses, and licenses to ministers of the gospel to solemnize marriages.
The act in question is for the relief of the probate court, and as the probate court now has jurisdiction of .the matters just enumerated, the *7 transferring of such matters to the court of insolvency would g’reatly relieve the probate court, even though it should retain exclusive jurisdiction in probate, testamentary and guardian matters. There is therefore a clear field and ample business for the court of insolvency without invading this alleged exclusive jurisdiction of the probate court. If it should be found that some of the powers, authority or duties conferred by this act, are too broad, and invade any exclusive jurisdiction of the probate court, it would be held as to the excess, that it is “plainly applicable,” as expressed at the end of the 10th and 12th sections.
Thus pruned down by the words “plainly inapplicable,” there is abundant warrant for the establishment of the court of insolvency, and the act is not in conflict with either the 7th or 8th section of the fourth article of the constitution.
In the next place it is urged by counsel for relator, that the election for the judge of the court of insolvency should be held on the first Tuesday after the first Monday in November, 1894, and not on the first Tuesday after the second Monday in November.
The second section of the act is as follows :
“Section 2. The first election for such judge shall be held on the first Tuesday after the second Monday in November, A. D. 1894, and shall be conducted in the same manner and governed by the same laws that are now in force or may' hereafter be enacted regulating the election of judges in this state. His term of office shall commence on the ninth day of February, A. D. 1895, and shall continue for the term of five years, and a successor shall be elected on the first Tuesday after the second Monday in November, A. D. 1899,' *8 and every five years thereafter. And in ease the office of any judge shall become vacant before the expiration of the regular term for which he shall havé’been elected, the vacancy shall be filled by appointment of the governor, until the office shall be filled by a successor duly elected and qualified. And in' case a successor shall not have been previously elected, such successor shall be elected on the first Tuesday after the second Monday in November that next occurs more than thirty days after the vacancy shall have happened.”
By this act the general assembly established a new court and provided for the election of a judge thereof; and it clearly had the power to fix the time and manner of such election. As to the manner, it provided that such election should be conducted in the same manner, and governed by the same laws, that are now in force, or may hereafter be enacted regulating the election of judges in this state. Judges in this state are elected on the first Tuesday after the first Monday in November, and as the election of the judge of the court of insolvency is to be governed by the same laws as govern the election of other judges, it would follow that the election for this new judge should be held 'on the same day,' were it not otherwise plainly and expressly provided in this act.
A plain, specific and definite provision in a statute, cannot be overcome by a general indefinite reference to another act.
It is urged that the first Monday in November was intended, and that the second Monday is an error or mistake. The second Monday is mentioned three times in this second section. The election for 1894 is to be held on the first Tuesday after the second Monday in November, the sue *9 eessor to be elected in 1899, is to be elected on the same day of the month, and any vacancy which may occur is to be filled by election to be held on the same day in November. Thus repeatedly naming the second Monday, indicates design rather than error or mistake.
The petition in effect avers that the second Monday is an error or mistake of the legislature, and that the first Monday was intended. To this petition there is a general demurrer. The demurrer does not admit the truth of the allegation as to the error or mistake, nor as to the intention of the legislature, because the force and legal effect of a statute cannot be altered or changed by averment in a pleading.
If there is no error or mistake in this statute, it must be construed and enforced according to its letter. If there is such error or mistake, and the intention of the legislature can be ascertained, the error or mistake should be corrected by the court.
That courts have power to correct errors and mistakes in -statutes, cannot be doubted; but such errors and mistakes must be manifest beyond doubt, either on the face of the act, or when read in connection with other statutes in pari materia.
When it thus appears beyond doubt that a statute, when read literally as printed, is impossible of execution, or will defeat the plain object of its enactment, or is senseless, or leads to absurd results or consequences, a court is authorized to regard such defects as the result of error or mistake, and to put such construction upon the statute as will correct the error or mistake, by carrying out the clear purpose and manifest intention of the legislature. The error or mistake, as well as the proper *10 correction, must appear beyond doubt from the face of the act, or when read in connection with other acts in pari materia.
The supreme court of Pennsylvania states the rule in these words: “The power is undoubted, but it can only be exercised when the error is so manifest, upon an inspection of the act, as to preclude all manner of doubt, and when the correction will relieve the sense of -the statute from actual absurdity, and carry out the clear purpose of the legislature. ’ ’ Lancaster Co. v. Frey, 128 Pa. St., 593.
An eminent text writer states the rules thus:
‘ ‘ The power to make such corrections is well es- ‘ tablished, but it is exercised only where the error is so manifest as to leave no doubt of the judicial mind as to the actual intent of the legislature. ” 23 Am. & Eng. Ency. of Law, 422.
The following cases are to the same effect: Jenks v. Langdon, 21 Ohio St., 362; Tappan v. Tappan, 6 Ohio St., 64; Cohen v. Cleveland, 43 Ohio St., 195; Sawyer v. State ex rel. Horr, 45 Ohio St., 343; Haney v. State, 34 Ark, 263; People v. Hoffman, 97 Ill., 234; Moody v. Stephenson, 1 Minn., 401; Graham v. Railroad Co., 64 N. Car., 631; Ex parte Hedley, 31 Cal., 108; Burch v. Newbury, 10 N. Y., 374; Lancaster Co. v. Frey, 128 Pa. St., 593; People v. King, 28 Cal., 265.
The ease at bar does not come within the prin- • ciple of any of the above cases.
The reasoning of the judge delivering the opinion in Sawyer v. State ex rel. Horr, 45 Ohio St., 343, does not support, but is against the claim of the relator in this case. The act there in question had few, if any, characteristics in common with this act.
*11 That act was an amendment to a general statute. This one is an independent act. There the registration of voters would be incomplete on the day fixed for the election. Here the registration will be full and complete. There, there was no machinery provided for holding the election. Here the machinery is full and ample. There other circuit judges were to be elected at the general election in November. Here there is no other judge of the court of insolvents to be elected in this state. There the act could not be executed for want of election laws. Here it can be fully and effectually executed according to its very letter»
The act here in question shows no error or mistake, either on its face or when read in connection with other acts in pa/ri materia; it can be carried into effect according to its letter; the object of the act — the relief of the probate court — will be as effectively accomplished if the election is held on the thirteenth as it would be if held on the sixth of November; no change will be made in the beginning or ending of the term of the judge. There is, therefore, no good reason for holding that there is an error or mistake in the act.
While a court might see no good reason for holding two elections only one week apart, the general assembly may have had substantial and satisfactory reasons therefor.
Even granting that there may be a latent mistake in the act, yet, in case of so much doubt, it would make a dangerous precedent for the judiciary to undertake its correction. It is safer to endure temporary inconvenience, than to lay the foundation for future judicial usurpation.

The demurrer is sustained and the petition diS' missed.