23 N.Y.2d 515 (1969)
In the Matter of Chrysler Properties, Inc., Appellant,
v.
G. Michael Morris, Register of the City of New York, County of New York, Respondent.
Court of Appeals of the State of New York.
Argued September 26, 1968.
Decided January 16, 1969.
Philip Irwin Aaron for appellant.
J. Lee Rankin, Corporation Counsel (Raymond S. Hack and Stanley Buchsbaum of counsel), for respondent.
Louis J. Lefkowitz, Attorney-General (Ruth Kessler Toch and Edwin R. Oberwager of counsel), in his statutory capacity under section 71 of the Executive Law.
Judges BURKE, SCILEPPI and BREITEL concur with Judge KEATING; Chief Judge FULD dissents and votes to affirm in an opinion in which Judges BERGAN and JASEN concur.
*517 KEATING, J.
The procedural history of this case is complex, but the issue presented may be fairly and simply stated: Is an amendment to section 251 of the Tax Law, which authorizes the City of New York to obtain judicial review of determinations of the New York State Tax Commission, constitutional when applied to determinations which were otherwise unreviewable on the date the amendment was enacted? The answer to this question requires an exploration into the slippery area of so-called "vested rights".
In August, 1964 petitioner, Chrysler Properties, Inc., sought to record a mortgage instrument in the office of the Register of New York County. At the same time, it applied for an exemption from the mortgage recording tax on the ground that no loans of new money were involved. The application was rejected and the petitioner paid the tax under protest.
Pursuant to section 251 of the Tax Law, petitioner then applied to the State Tax Commission for a refund contending that $67,500 had been erroneously collected. On March 20, 1967 the commission ordered a refund. The order itself directed the recording officer of New York County to make the refund. Demand was made, and, when he refused, petitioner commenced this article 78 proceeding to enforce the order by compelling payment.
It is conceded by the city that, as the law stood on March 20, 1967, the order of the commission was, for all purposes relevant *518 here, final, and consequently the article 78 proceeding was essentially in the form of a mandamus proceeding since neither the city nor the recording officer was authorized to seek review of the order in the courts (Matter of City of New York v. New York Univ., 3 A D 2d 954).
On April 24, 1967 the Governor signed into law chapter 499 of the Laws of 1967 amending section 251 of the Tax Law. That amendment granted the city the right to seek review of a recording officer's determination before the commission and thereafter to seek judicial review of adverse determinations of the commission. The amendment was made retroactive to determinations of the commission made after January 1, 1967.
On the basis of this new law, Special Term in an order dated June 7, 1967 denied the petition without prejudice to renewal within 90 days in order to afford the city an opportunity to present its case to the commission. The city promptly moved for a new hearing and for reconsideration before the commission. On June 27, 1967 petitioner renewed its article 78 proceeding and also moved for a stay of an article 78 proceeding brought by the city in Albany County to review the determination of the commission. On July 25, 1967 the motion for a stay was denied and the petition for a refund was dismissed "without prejudice to renewed application after final determination of the City of New York's proceedings to review the determinations of the State Tax Commission now pending in the Supreme Court, Albany County".
Thereafter, the Appellate Division (First Department) unanimously affirmed the order of the Supreme Court without opinion. Petitioner has taken an appeal as of right to this court on constitutional grounds, alleging that the amendment to section 251 of the Tax Law unconstitutionally deprived petitioner of its right to a tax refund ordered by the commission and therefore, as a matter of law, it is entitled to judgment.
When embarking on a journey into the realm of "vested rights", it is dangerous indeed not to proceed with great caution for the concept is a fiction and hides many unmentioned considerations of fairness to the parties, reliance on pre-existing law, the extent of retroactivity and the nature of the public interest to be served by the law. (Hochman, Retroactive Legislation, 73 Harv. L. Rev. 692.) The modern cases reflect more *519 candid considerations of these relevant factors as well as a less inflexible view of the right of the Legislature to pass retroactive legislation. In any event, this is an area where broad conclusions are to be studiously avoided for it is impossible to predict in advance how in each concrete case the various factors will line up. On balance, we have concluded that the petitioner is entitled to judgment directing payment and that, on the date this proceeding was commenced, the money was due and owing, that appellant had obtained a sufficiently certain right to the money and that the later amendment, which was made retroactive without any discernible reason, cannot alter its right to payment.
No case cited by the parties is squarely in point, but the cases abound in dicta. Petitioner cites two cases both of which contain powerful language in support of its position. In Germania Sav. Bank v. Village of Suspension Bridge (159 N.Y. 362) petitioner finds its greatest support. The right of appeal to the Court of Appeals at the time of judgment was limited to actions where the amount demanded in the complaint was in excess of $500. Sixteen months after judgment a statute was enacted permitting appeals in cases involving a lesser amount. This court held it was not intended that the statute have retroactive effect, and hence the appeal should be dismissed. The opinion, however, relied upon the view that, had the statute been given retrospective effect, it would be unconstitutional. This passage in Judge VANN'S opinion is most relevant (159 N. Y., pp. 367-368): "The legislature has control of remedies so far as they affect existing actions. This control includes the power to extend the time to appeal, or to grant a new right of appeal, provided some time yet remained, according to the law in force when the legislature acted, within which an appeal might have been taken. If, however, according to the law existing when the statute extending the time to appeal, or granting a new right of appeal, was passed, the judgment had become final and unalterable, because no further right of appeal existed, then the judgment conferred a vested right and was property of which the owner could not be deprived by an act of the legislature, or otherwise than through due process of law. An appeal brought pursuant to a statute which authorizes an appeal after *520 the time provided by law had expired, or authorizes a further appeal after the only appeal authorized by law had been brought and finally decided, although it might result in the reversal of the judgment and be in form a judicial proceeding, would not be what is known as due process of law, which is not satisfied by a judgment based upon an unconstitutional statute".
Other decisions to similar effect are: Feiber Realty Corp. v. Abel (265 N.Y. 94); Waddey v. Waddey (290 N.Y. 251); Livingston v. Livingston (173 N.Y. 377); Matter of Greene (55 App. Div. 475, affd. 166 N.Y. 485); Burch v. Newbury (10 N.Y. 374, 386 [concurring opn.]).
The city would distinguish this case from the situation where appellate review remedies already exist and had been exhausted. In support of this position, it cites Stephens v. Cherokee Nation (174 U. S. 445). There, however, the court interpreted the statute as bringing up for review only the question as to whether the legislation under which the original determinations were made was itself constitutional. This is a far narrower scope of review and, moreover, the constitutionality of the law was upheld. Also the order of refund here was absolute, while in Stephens there was no certainty that there would be any distribution of lands or property.
Garrison v. City of New York (88 U. S. 196) is not in point. It presented no true constitutional question since at the time of the entry of the order the city under then existing law had a method of obtaining relief from the order of confirmation. Therefore, the statute purporting to grant a retroactive right of review did not in fact do so. Here the decision of the Tax Commission was not reviewable at the instance of the city because "Under the statutory scheme, the commission [was considered] the sole guardian of the public interest in such a case" (Matter of City of New York v. New York Univ., 3 A D 2d 954, supra). Finally, in Paramino Co. v. Marshall (309 U. S. 370), we are dealing with the principle that the Legislature may cure an obvious defect in its legislation. The later law did not "operate to create new obligations where none existed before" (309 U. S., p. 378). Here, however, there was no defect in the existing scheme for review of recording tax determinations. The State Tax Commission presumably was looking after the *521 city's interest by refusing a refund unless the right to it was clearly established. Despite this presumption, the commission had held the moneys were improperly collected, and, solely because of the city's delay, the money had not been paid back at the time the law permitting appeal came into being.
On the whole, when the precedents are summarized, it is fair to state that the courts view the type of retroactive legislation involved here with great suspicion, although the rigidities of old theories of "vested rights" are now rejected. When one looks at the problem from the point of view of what is a proper attitude toward this type of legislation, one can find a strong pull in opposite directions. If it is valid, the courts will only proceed to decide the merits of the appeal and, when reviewing the case on the merits, presumably, the courts will reach the correct result. If the petitioner is entitled to the moneys, he will have them. If he is not entitled to the refund, and the commission has made an erroneous interpretation of the law, then petitioner has lost nothing to which he is truly entitled.
Tending in the opposite direction is the question of reliance which at some point becomes the predominant element in the equation. A strong argument can be made that, absent a showing of reliance, the Legislature should be free to draw the line where it wishes. Yet, as an alternative to involving the courts in the difficult determinations whether there was or was not reliance in each instance, it appears to us reasonable to draw the line where the judgment becomes final even if in any particular situation there may not be reliance.[*]
The city argues that, if prior to the expiration of the existing time limits the Legislature authorized a further appeal, the *522 courts would recognize the validity of the legislation. Therefore, it sees no objection to this short period of retroactivity. While it is true that a new right of appeal can overturn a favorable result in the lower court, still the city would agree that a line must be drawn between vested and contingent rights.
If the Legislature should pass a law saying there should be an unlimited period in which to take appeals to the Court of Appeals or to make motions for reargument, this court would surely refuse to apply the legislation to appeals taken or motions made years after the event where it would cause grave injustices.
There is also much difficulty with the distinction which the city would draw between binding orders of refund made by administrative tribunals and final judgments of courts. The area is already too filled with artificial distinctions and additional ones should be avoided.
We have all been raised in a legal tradition which finds retroactive legislation distasteful. After balancing the various factors, we conclude that, absent any showing of the public interest to be served by this retroactive legislation (cf. People ex rel. H. D. H. Realty Corp. v. Murphy, 230 N.Y. 654), it should not be sanctioned here. The city should be required to make a strong case for retroactive effect. No persuasive case has been made.
The order of the Appellate Division should be reversed and petitioner's application for judgment should be granted, with costs.
Chief Judge FULD (dissenting).
In April of 1967, section 251 of the Tax Law was amended to afford to the Register of the City of New York the right, previously unavailable, to bring an article 78 proceeding to review a determination of the State Tax Commission with respect to the imposition and collection of the mortgage recording tax. The amendment was retroactive to January 1, 1967. The question presented on this appeal is whether a Tax Commission order of March 20, 1967, directing payment of a tax refund to the petitioner, Chrysler Properties, created "vested rights" in the petitioner which are constitutionally immune to challenge by the city and, accordingly, preclude the latter from seeking judicial review pursuant to the retroactively amended statute.
*523 The petitioner brought this article 78 proceeding when the city refused to comply with the commission's refund order, involving a tax of $67,500 which Chrysler had paid under protest in 1964. In a separate proceeding, the city, relying on section 251 as amended, sought judicial review of the commission's determination. In the case now before us, the court at Special Term, concluding that the city was entitled to pursue the remedy granted to it by the Legislature, refused to stay the city's proceeding and dismissed Chrysler's petition; this disposition was, however, without prejudice to Chrysler to renew its application after review of the commission's order had been completed. The Appellate Division unanimously affirmed that determination.
I agree with the courts below. I find no support for the decision now being made that, since no right of review was available to the city on March 20, 1967, when the commission issued its order, the petitioner's rights were "vested" on that date and the city was barred, on constitutional grounds, from having the courts decide, on the strength of the April amendment, whether the Tax Commission had ruled correctly.
The concept of "vested rights" is, as the court's opinion itself points out (p. 518), a "fiction [which] hides many unmentioned considerations of fairness to the parties, reliance on preexisting law, the extent of retroactivity and the nature of the public interest to be served by the law." It is certainly true, as the majority opinion also notes (pp. 518-519), that "The modern cases reflect more candid considerations of these relevant factors as well as a less inflexible view of the right of the Legislature to pass retroactive legislation." For these very reasons, the case before us seems to me an especially inappropriate one for the conclusion that "vested rights" stand in the way of an otherwise reasonable and valid enactment  one which merely grants the City of New York the right to be heard, and to have judicial review, on a matter which affects it most directly. This is particularly true  as indicated below (see cases and discussion, infra, pp. 526-527)  where the asserted "right," claimed to be "vested," is merely one to an immunity from any judicial review whatever and where the retroactive statute only remedies, in reasonable fashion, an existing defect in procedure.
It will be helpful at the outset to recall that we are here dealing *524 with a tax statute (Tax Law, §§ 250-253) and that, in the field of taxation especially, retroactivity has long been a constitutional commonplace. Decisions upholding retroactive legislation which affected the interests of taxpayers far more seriously than does the mere procedural amendment involved on this appeal  laws, indeed, which imposed taxes on transactions completed before the taxing statute was enacted  persuasively point the answer to the question for decision. (See Welch v. Henry, 305 U. S. 134, 146; Cooper v. United States, 280 U. S. 409; Matter of Lacidem Realty Corp. v. Graves, 288 N.Y. 354, 357; People ex rel. Beck v. Graves, 280 N.Y. 405, 409.) As the Supreme Court  in upholding a 1935 Wisconsin tax on income received in 1933  observed in Welch v. Henry (305 U. S., at p. 148):
"For more than seventy-five years it has been the familiar legislative practice of Congress in the enactment of revenue laws to tax retroactively income or profits received during the year of the session in which the taxing statute is enacted, and in some instances during the year of the preceding session."[1]
Against this background, we see how little basis there is for a constitutional objection to the statute involved in the present case. The amendment to section 251 does not impose a new liability where none existed before. It does not, consequently, have nearly as harsh an impact on the taxpayer as did the retroactive tax laws just mentioned  laws which have uniformly been upheld as constitutional. It merely gives the deeply interested city an opportunity for judicial review of the question whether the law, as it stood at the time of the mortgage transaction, required the payment of a recording tax. By that procedure, as *525 the court recognizes (opinion, p. 521), Chrysler will suffer nothing  except delay compensated for by interest  if it was, in fact, entitled to exemption from the tax. This mildly inconveniencing amendment, it must be noted, is retroactive by its terms for barely four months  from its signing into law on April 24, 1967 to the beginning of that year. In point of fact, it is actually retroactive in its impact on Chrysler for an even shorter time  for only thirty-five days, that is, from April 24 to March 20, 1967.
Obviously, too, there is no element of reliance here to give weight to the petitioner's claim of constitutional invalidity. The city asserted its right to the tax at the moment the mortgage instrument was proffered for recording and it has never retreated from that position; more, the petitioner does not even suggest that it relied, in any way, on the commission's refund order, once it had been handed down. The city gave no sign of acquiescence in the order, and Chrysler found it necessary to commence an article 78 proceeding  on April 17, 1967, before the enactment of the present amendment  to compel repayment of the tax.[2] The majority opinion (p. 521), noting that in cases of this kind "reliance * * * at some point becomes the predominant element", concedes its absence here, yet goes on to justify the court's holding on the ground that a strict rule of finality should be adopted "as an alternative to involving the courts in * * * difficult determinations whether there was or was not reliance in each instance".
It does not seem to me, however, that there is any such difficulty of determination. A very simple test for reliance may be employed: was there a request for compliance with the order and was this request agreed to or refused? Surely, no reliance upon an administrative order addressed to an official body is ever justified until such a request is made, nor is it justified after the request has been refused, as it was here. Not unless the request were followed by an apparent acquiescence in the order would there be one of the necessary  though not all of the sufficient  elements of an estoppel.
*526 What magic, then, one may ask, was there in the handing down of the commission's order of March 20, 1967, sufficient to bar the city from defending  by hearing and judicial review  its collection of a tax which was, itself, nonretroactive? The question, it seems to me, answers itself. Plainly, no one may acquire a "vested right" in complete immunity from court review of an administrative determination, particularly when the review procedures are created and availed of within so short and reasonable a time after the date of the challenged order as they were here. (See, e.g., Stephens v. Cherokee Nation, 174 U. S. 445, 478; Graham & Foster v. Goodcell, 282 U. S. 409, 426; Paramino Co. v. Marshall, 309 U. S. 370, 378.) Very much in point is the Supreme Court's statement in Stephens (174 U. S. 445, 478, supra) that
"the mere fact that the legislation is retroactive does not necessarily render it void. * * * [W]hile it is undoubtedly true that legislatures cannot set aside the judgments of courts * * * the grant of a new remedy by way of review has often been sustained under particular circumstances. * * * [N]or can the act [before the court] be properly regarded as destroying any vested right, since the right asserted to be vested is only the exemption of these judgments from review". (Emphasis supplied.)
Equally relevant is this statement from the opinion in the Paramino case (309 U. S., at p. 378): "[W]e do not agree that the immunity obtained by the lapse of the time for review is the type of immunity which protects its beneficiary from retroactive legislation authorizing review of the claim." And the opinion went on to say, "This * * * act does not set aside a judgment, create a new right of action or direct the entry of an award. The hearing provided for is subject to the provisions of the * * * act [under which the original determination had been made]. It does not operate to create new obligations where none existed before. It is an act to cure a defect in administration developed in the handling of a * * * claim" (emphasis supplied). As is manifest, the amendment to section 251 is no more than  to cull from the above opinion  "an act to cure a defect in administration * * * in the handling of a * * * claim." It corrects only the anomalous *527 omission from the law, as it stood, of a procedural right enjoined by fairness and common sense.[3]
In short, no true obstacle exists to allowing the City of New York its day in court in this dispute with its taxpayer, and the action of the Legislature, in making the amendment to section 251 retroactive for a brief period of time was, in my view, entirely reasonable and well within constitutional limits. We should not, by our decision here, reintroduce into our law a conceptualism from which, increasingly, it has been emancipated.
The order of the Appellate Division should be affirmed.
Order reversed, with costs, and matter remitted to Special Term for further proceedings in accordance with the opinion herein.
NOTES
[*] Cases cited by the dissenting opinion are fully consistent with this approach. Thus, in both People ex rel. Beck v. Graves (280 N.Y. 405) and Matter of Lacidem Realty Corp. v. Graves (288 N.Y. 354), a statute seeking to apply a tax liability retroactively was held unconstitutional. In the latter case, however, a partial retroactivity to January 1 of the preceding year was permitted in accordance with the usual practice that tax legislation will usually apply to the year in which it is enacted and perhaps the immediately preceding year (Welch v. Henry, 305 U. S. 134). Thus there can be no consideration of reliance on the part of the public. Again it is simply a question of seeking to balance the various factors to arrive at a reasonable point of demarcation.
[1] Property taxes and benefit assessments on real estate have similarly been imposed retroactively without being regarded as offensive to any constitutional principle. (See Wagner v. Baltimore, 239 U. S. 207; Seattle v. Kelleher, 195 U. S. 351.) Indeed, our own court, in Matter of Lacidem Realty Corp. v. Graves (288 N.Y. 354, 357, supra), permitted a 1941 amendment to the Tax Law, which levied a tax on the proceeds realized by landlords from the submetering of electricity, to be applied retroactively for more than a year. And, in another tax case, People ex rel. Beck v. Graves (280 N.Y. 405, 409, supra), we noted that "[w]hether a statute which by its express terms is retroactive will be sustained is usually a question of degree." (Emphasis supplied.)
[2] The April 17 proceeding was dismissed in June of 1967 without prejudice, in view of the change in the law. The petitioner renewed its article 78 proceeding some time later that same month.
[3] Cases relied on by Chrysler, indicating that new rights of appeal from judgments may not be created after existing appellate remedies have expired or been exhausted, are inapposite. (See Germania Sav. Bank v. Village of Suspension Bridge, 159 N.Y. 362, 367-368; Feiber Realty Corp. v. Abel, 265 N.Y. 94, 99; Burch v. Newbury, 10 N.Y. 374, 392.) For one thing, the Tax Commission's order is simply not a judgment. It was in no way self-enforcing and created no lien or rights which would affect third parties, as a docketed judgment may. Far more important, however, is the fact that the party to be affected by a judgment is invariably accorded the opportunity for a hearing and at least one appeal, rights not available to the city when the Tax Commission's order of March 20, 1967 was issued.